UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-00039-JVS-KES | Date | January 9, 2025 |
| Title | Celena Sherman et al v. City of Beuna Park et al | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings:   **[IN CHAMBERS] Order Regarding Motion to Enforce Settlement [15]**

Before the Court is Defendant Cedar Fair L.P's ("Cedar Fair") motion to enforce settlement agreement and award attorneys' fees incurred in enforcement or in the alternative, reopen discovery. (Mot., Dkt. No. 15.) Plaintiffs Celena Sherman ("Celena") and Jalen Sherman ("Jalen"), by and through his guardian *ad litem*, Celena Sherman (collectively, "Shermans") timely opposed.[1] (Dkt. No. 18.) Cedar Fair replied (Reply, Dkt. No. 19) along with its evidentiary objections to the Shermans' declarations. (Evidentiary Objections, Dkt. Nos. 20, 21). The Shermans responded to the evidentiary objections (Response to Evidentiary Objections, Dkt. No. 22) and Six Flags replied (Reply to Evidentiary Objections, Dkt. No. 24).

For the following reasons, the Court **GRANTS** the motion to enforce the settlement agreements and Cedar Fair's request for attorneys' fees in the amount of $4,893.75. The Court **DISMISSES** the action with prejudice and the case is **DISMISSED**.

The Court further finds that oral argument would not be helpful on this matter. Fed. R. Civ. P. 78; L.R. 7-15. Accordingly, the Court **VACATES** the January 13, 2025, hearing.

**I. BACKGROUND**

---

[1] Richie filed a declaration requesting the Court to reflect that the Shermans timely filed their opposition. (Declaration, Dkt. No. 25.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-00039-JVS-KES | Date | January 9, 2025 |
| Title | Celena Sherman et al v. City of Beuna Park et al | | |

On September 27, 2022, the Shermans filed a complaint against Cedar Fair (now Six Flags, as a successor by merger) arising from their visit to Knott's Berry Farm amusement park and the alleged detainment there. (Memorandum in Support of Motion ("Mem. in Supp."), Dkt. No. 15-1, at 1.)

The Shermans initially hired Tory Pankopf ("Pankopf") of DRE Law as their counsel. (Id. at 5.) Cedar Fair retained as counsel Sean Gibbons ("Gibbons") and Elizabeth M ("Mu"). (Id.) On May 7, 2024, Pankopf filed a notice of settlement the Court dismissed the case without prejudice but provided ninety days to reopen the case for good cause if settlement is not consummated. (Order of Dismissal, Dkt. No. 14.) The Shermans signed the agreements on May 10, 2024. (Settlement Agreements, Dkt. No. 15-2, Ex. E–F.)

On May 15, 2024, Shermans' new counsel, Darren Richie ("Richie") from DRE Law, emailed Cedar Fair's counsel, requesting them not to process the Shermans' settlement agreement due to "material issues that need to be addressed." (Dkt. No. 15-2, Ex. G.) When asked what the issue was, Richie replied that the Shermans reported that they were never consulted or advised by Pankopft of the settlement agreement. (Dkt. No. 15-2, Ex. H, at 1.) Richie further requested that Pankopf be removed from the email chain because he was no longer an associate at the firm. (Id.) The next day, Pankopf replied to the email chain, explaining the negotiation process and that Celena had authorized a specific amount to settle the case. (Dkt. No. 15-2, Ex. J, at 1.)

On May 16, 2024, Pankopf contacted Gibbons. During these conversations, Pankopf stated that he and Celena had coordinated the settlement negations together and believed Richie wanted to unwind the agreements because he thought it was not big enough. (Mem. in Supp., at 6.) Gibbons's associate, Daniel DaSilva ("DaSilva"), who listened in to the conversation, attested to the content of these conversations. (Dkt. No. 15-2, Ex. I; Mem. in Supp., at 6–7.)

On May 17, Richie emailed Gibbons. He reaffirmed Celena's position that she was never advised by Pankopf and that Cedar Fair can either proceed to enforce the settlement in court or allow him 14 days to personally meet with Celena to advise her of her rights. (Dkt. No. 15-2, Ex. L, at 1.) Despite two follow-up emails, Cedar Fair's counsel did not respond because they believed the settlement agreement to be valid. (Dkt. No. 15-2, Ex. M, at 1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:24-cv-00039-JVS-KES                            Date   January 9, 2025

Title   Celena Sherman et al v. City of Beuna Park et al

On November 22, 2024, Cedar Farms filed this motion to enforce the settlement agreements and recover attorneys' fees or in the alternative, reopen discovery for limited purposes. (See generally, Mot.)

## II. LEGAL STANDARD

### A. Motion to Enforce Settlement

"[A] district court has the equitable power to enforce summarily an agreement to settle a case pending before it." Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987). To enforce a settlement agreement, the agreement must be complete. Id. A settlement agreement also requires the express authorization of both parties. See Harrop v. Western Airlines, Inc., 550 F.2d 1143, 1145 (9th Cir. 1977). Whether an agreement is complete is "governed by familiar principles of contract law." See Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989); Walker v. Gomez, 609 F. Supp. 2d 1149, 1154 (S.D. Cal. 2009) ("[B]ecause a settlement agreement is a contract, 'the legal principles which apply to contracts generally apply to settlement contracts.'"). Under California law, courts look to the intention of the parties to determine whether "a writing constitutes a final agreement or merely an agreement to make an agreement." Beck v. Am. Health Group Int'l, Inc., 211 Cal. App. 3d 1555, 1562 (1989) (quoting Smissaert v. Chiodo, 163 Cal. App. 2d 827, 830 (1958)).

The intention of the parties is assessed by their objective intent—as evidenced by the words of the instrument itself—rather than the parties' subjective intent. Id. Words are given their "usual and ordinary meaning of the language used and the circumstances under which the agreement was made." Walker, 609 F. Supp. 2d at 1154 (quoting Lloy's Underwriters v. Craig & Rush, Inc., 26 Cal. App. 4th 1194, 1197–98 (1994)). "[T]he defense of uncertainty is disfavored, and the court should enforce an agreement if it appears the parties intended to enter into a contract and the outlines of the agreement are sufficiently definite that the court knows what is to be enforced." Id. at 1120–21. However, "[w]here material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." Callie, 829 F.2d at 890.

### B. Motion for Attorney Fees

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-00039-JVS-KES | Date | January 9, 2025 |
| Title | Celena Sherman et al v. City of Beuna Park et al | | |

The prevailing party in an action to enforce a contract may recover reasonable attorney's fees where the contract expressly provides for it. Cal. Civ. Code § 1717; Hannon v. Sec. Nat. Bank, 537 F.2d 327, 328 (9th Cir. 1976).

When calculating reasonable attorney's fees using the lodestar method, the Court must consider both the reasonableness of the hourly billing rate and the number of hours required. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Although the fee applicant bears the burden of establishing entitlement to an award and documentation of the appropriate hours expended and hourly rates, "California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent." Syers Properties III, Inc. v. Rankin, 226 Cal. App. 4th 691, 698 (2014). The prevailing party seeking attorney's fees need only "identify the general subject matter of his time expenditures" to meet its burden of establishing its fee request is reasonable. Hensley, 461 U.S., at 437 n.12. This limited obligation reflects the broader policy that a "request for attorney's fees should not result in a second major litigation." Id. at 437.

### III. Discussion

A.   *Motion to Enforce Settlement*

First, to be enforced, a settlement agreement must be a complete agreement. Callie, 829 F.2d at 890. An agreement is complete if the parties mutually agree on all material terms. Under California law, "settlement agreements are unenforceable when a material term is uncertain or undefined." Lindsay v. Lewandowski, 139 Cal. App. 4th 1618, 1621–22 (2006). Second, the parties must have "either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute." Schaffer v. Litton Loan Servicing, LP, 2010 WL 9951762, at *6 (C.D. Cal. Oct. 18, 2010) (internal quotations omitted). An attorney has no authority to settle an action without the express permission of his client. Navrides v. Zurich Ins. Co., 5 Cal. 3d 698, 702 (1971); Harrop, 550 F.2d, at 1145.

Cedar Fair contends that the settlement agreement meets all the standard elements of contract formation: offer, acceptance, and consideration. (Mem. in Supp., at 10–11.) The agreement is also complete and unequivocal in all its material terms. For example,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-00039-JVS-KES | Date | January 9, 2025 |
| Title | Celena Sherman et al v. City of Beuna Park et al | | |

the settlement agreement clearly lays out the settlement amount, the exchange of promises and actions by both parties, and that it is fully and completely integrated. (Mem. in Supp., at 9, 11; Celena Settlement Agreement, Dkt. No. 15-2, Ex. E, at 3, 5, 6.) Each paragraph under "Promises of Ms. Sherman" section of the agreement is individually signed by Celena. (See generally, Celena Settlement Agreement.) The Shermans expressly accepted the offer, a manifestation of mutual consent, thereby creating a binding contract. (Id. at 11.)

Contrarily, the Shermans argue that they have neither agreed to the terms of the settlement nor authorized their counsel, Pankopf, to accept the settlement. (Opp'n, at 4.) Consequently, the agreement is incomplete because the parties did not agree to the material terms. (Id.) Celena alleges that they had "never once" directly communicated with Pankopf and had no knowledge of the settlement agreement until Pankopf's paralegal, Laura Mackie, contacted her in May 2024. (Declaration of Celena Sherman ("Celena Decl."), Dkt. No. 18-2 ¶¶ 4–5, 8; Celena Decl., Ex. A.) She was not advised of her rights to make a counteroffer, and Pankopf never reviewed the terms of the agreement with her. (Declaration of Darren Richie ("Richie Decl"), Dkt. No. 18-1 ¶¶ 10–11.) She believes that Pankopf acted in his best interest to close her case as soon as possible because he had "too many open cases." (Celena Decl. ¶ 12.)

Here, the Court finds the settlement agreements are complete and binding on the parties. To determine whether there was a mutual agreement, courts look to the party's objective intent as evidenced by the instrument itself. See Beck, 211 Cal. App. 3d, at 1562. The Shermans argue that there was no agreement because their counsel Pankopf "negotiated and finalized the settlement agreement unilaterally." (Opp'n, at 4.) However, the Court is unpersuaded to find a lack of mutual consent due to an alleged failure of counsel to advise the Shermans. The settlement agreements exhibit Celena's signature throughout. (See generally, Celena Settlement Agreement.) As evidence by her initials on at least ten paragraphs in each of the agreement, she read them in detail, she does not contest that she signed the agreements. (Id.) Moreover, the agreements highlight in bold, on three different occasions, that Cedar Fair recommends Celena to consult with an attorney prior to signing the agreement. (See e.g., Celena Settlement Agreement, at 1, 4–5.) By signing, she "acknowledges that [she and Jalen] has been advised to consult with an attorney of his own choosing." (Id., at 5.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:24-cv-00039-JVS-KES                                    Date   January 9, 2025

Title   Celena Sherman et al v. City of Beuna Park et al

    The Shermans seek to introduce extrinsic evidence, such as her texts with the vice president of DRE Law, to invalidate the agreement.  (See id. Ex. A.)  However, as Cedar Fair argues, a party cannot introduce extrinsic evidence that contradicts the plain meaning of the agreement's provisions under the parol evidence rule.  See Cal. Civ. Proc. Code § 1856(a) (West); (Mem. in Supp., at 12–13.)  The settlement agreements are unambiguous and the Shermans do not dispute this.  Furthermore, Celena does not provide any evidence to suggest that any exceptions to the parol evidence rule should apply.  She does not argue that she was incapacitated to understand the terms of the agreement, was coerced, or fraudulently induced to sign them.  Ostensibly, she signed the agreement out of her own volition.  (Sherman Decl. ¶ 9.)  Therefore, extrinsic evidence is inadmissible to find a lack of mutual agreement.

    Furthermore, it is insufficient to simply argue that Celena never authorized her counsel to settle the dispute.  Celena concedes that when Pankopf became her attorney, she told him the "desired outcome for [her] case and shared [her] desired compensation." (Celena Decl. ¶ 4.)  Pankopft's email to Richie and Cedar Fair's counsel on May 16 communicates the details of the negotiation process and that Celena "authorized her case to be settled for a specific amount." (Gibbons Decl., Ex. J, at 1.)  Neither party provides any evidence of such communication between Pankopf and Celena or lack thereof.  Nevertheless, the second prong of an enforceable settlement agreement requires that the parties "*either* agree[] to the terms of the settlement *or* authorize[] their respective counsel to settle the dispute." Schaffer, at *6 (internal quotations omitted) (emphasis added).  Since the Court determined that the parties agreed to the terms of the settlement, finding Celena's express authorization is unnecessary to enforce the settlement agreements.

    Parties should be bound by their deliberate actions and their chosen counsel.  While the Shermans may be in an unfortunate circumstance due to their counsel's alleged wrongdoing, such mistakes are more appropriately addressed through malpractice claims.  Accordingly, the Court finds the settlement agreement complete and binding.  The Court **GRANTS** the motion to enforce settlement agreements.

    B.    *Attorneys' Fees*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-00039-JVS-KES | Date | January 9, 2025 |
| Title | Celena Sherman et al v. City of Beuna Park et al | | |

Cedar Fair asserts that they are entitled to reasonable attorneys' fees according to the terms of the settlement agreement provision 4.7. (Mem. in Supp., at 14) The settlement agreement provides:

> Should any action be brought by Jalen, whether by and through Ms. Sherman or otherwise, or Released Parties to enforce any of the terms of this Agreement, the prevailing party shall be entitled to recover all costs and expenses in the prosecution or defense of that action, including reasonable attorneys' fees.

(Celena Settlement Agreement, at 6.)

Cedar Fair argues that they incurred a total of $4893.75 in attorneys' fees in preparing the instant motion. (Mem. in Supp., at 14.) Gibbons claims that his rate is $350 per hour and that he spent a total of thirteen hours on drafting the motion and reply, reviewing the opposition, and preparing for a hearing. (Gibbons Decl. ¶ 26.) Mu's rates are $275 per hour and claims she spent forty-five minutes reviewing the materials, incurring a total of $206.25 in attorneys' fees. (Mu Decl. ¶ 9.) DaSilva's rates are $275 per hour and states he spent thirty minutes reviewing the documents, incurring a total of $137.50 in attorneys' fees. (DaSilva Decl. ¶ 7.) The Court finds these fees reasonable. Accordingly, the Court **GRANTS** Cedar Fair's request for attorneys' fees in the amount of $4893.75 pursuant to the terms of the settlement agreement.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to enforce the settlement agreements and Cedar Fair's request for attorneys' fees in the amount of $4893.75. The Court **DISMISSES** this action with prejudice.

**IT IS SO ORDERED.**